*5 By the Court,
Hitchcock, Judge :
As the title of the plaintiff to
the premises in controversy is derived from the State of Ohio, the first inquiry to be made is, whether those premises were ever vested in the State ? It is claimed for the plaintiff that the title to this property was vested in the State by an Act of Congress of the 28 th February, 1833, granting certain lands to the State for the purpose of constructing a road from the Miami of Lake Erie to the west line of the Connecticut Western Reserve. The Act may be found at the 152d page of the Ohio Land Laws, published in 1825.
By the first section it is enacted, “ That the State of Ohio is hereby ■authorized to lay out, open, and construct a road from the lower rapids of the Miami of Lake Erie, to the western boundary of the Connecticut Western Reserve, in such manner as the Legislature of said State may by law provide, with the approbation of the President >of the United States; which road, when constructed, shall ever remain a public highway.”
In the second section it is enacted, “ That in order to enable the -State of Ohio to open and construct said road, a tract of land one hundred and twenty feet wide, whereon to locate the same, together with a quantity of land equal to one mile on each side thereof, and ■ adjoining thereto, to be bounded by sectional lines, as run by the Un:ted States, to defray the expense of making said road, is hereby granted to said State, to commence at the Miami Rapids, and termi-nate at the western boundary of the Connecticut Western Reserve.” In the third section it is provided, that if any of the lands through which it might “ be thought expedient to open said, road,” should have been sold by the United' States, the Secretary of the Treasury should pay to some officer to be appointed by the State of Ohio, the net proceeds of the sales of the quantity thus sold at the minimum price, And in the fourth section the President of the United States is required to “ direct, that until the first day of June, one thousand ■eight hundred and twenty-three, none of the public lands shall be sold within three miles, on each side of a line to be drawn direct from the foot of the rapids of the Miami of Lake Erie, to the Lower Rapids of Sandusky, thence to the western boundary of the Connecticut Western Reserve.”
It would seem that there could be little difficulty in ascertaining the lands included in this grant. In the first place, there is the land mpon which the road itself is to be opened, consisting of a strip one ^hundred and twenty feet wide, commencing at the Lower Rapids *6 of the Miami, and running thence to the west line of the Connecticut Western Reserve. Next, for the purpose of constructing the road, a quantity of land is granted equivalent to one mile in width on “ each-side thereof .” This land is to he taken on “ each side ” of the road “ and .adjoining thereto,” and is “ to be bounded by sectional lines as run by the United States.” If any of the land thus described, had been sold by the United States, other lands were not to be given in lieu thereof, but the avails of the sale, estimating the same at the minimum price, were to be paid over to the State of Ohio. And in order that the lands intended to be granted, should not be sold until the State of Ohio might have time to signify its acceptance, the President of the United States is required to direct that for a limited time “ none of the public land shall be sold within three miles of each side of a line, to be drawn direct from the foot of the Rapids of the Miami of Lake Erie to the lower rapids of Sandusky ; thence to the western boundary of the Connectieut Western Reserve.” The contemplated road itself was to be constructed from the lower rapids of the Miami to the west line of the Connecticut Western Reserve. The river and the west line of the Reserve were to be its termini, and it would cross over neither the one nor the other. The land granted was to be on “ each side ” of, and “ adjoining to ” said road, and the-land reserved from sale was limited to the Miami River on the west, and the Connecticut Western Reserve on the east. Under these circumstances there can be no well founded pretense, that it was the intention of Congress to grant any other lands to the State of Ohio' than such as were situate between the Miami River and the west line of the Connecticut Reserve.
The State of Ohio accepted this grant upon the terms and stipulations in the Act of Congress contained, and a road was surveyed and opened, commencing at the Lower Rapids of the Miami, on the south shore of the river, thence running to the Lower Rapids of the San-dusky, and thence to the west line of the Connecticut Reserve ; and by such acceptance she became entitled to the land on 11 each side ” of and “ adjoining” to this road, not exceeding two miles in width.
Is the land in controversy within this grant? It is not between the “ west line of the Connecticut Reserve and the Miami River of' Lake Erie.” It is not “ adjoining ” the road, but is separated from its western termination by a navigable river. It is on neither “side” of said road. With what propriety then can it be claimed to be; within the grant ?
*7 *But it is argued by counsel for the plaintiff, that inasmuch as the land taken by the State was to be bounded by sectional lines, and as the road runs into the section of which the land in controversy con* stitutes a part, therefore the State was entitled to the entire section. In arriving at a construction to this grant, the whole must be taken together, and taking the whole together, the'entire lands granted, are situate east of the Miami River. Section No. 6 is, by the river, divided into two fractions, one on the south and the other on the east side of the river. The road terminates at the north line of the southern'fraction. To that fraction the State was entitled, and the clause in the statute requiring the State to take by sectional lines, is complied with, when she is required to take this fractional section by its lines as surveyed by the United States.
Such being the opinion of the Court, the title of the plaintiff fails, and the defendant must have judgment.